**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Criminal No. 1:19-cr- |
| | : | |
| v. | : | |
| | : | **VIOLATIONS:** |
| **GARY T. HOLLIDAY,** | : | 18 U.S.C. § 1343 |
| | : | (Wire Fraud) |
| Defendant. | : | |
| | : | **FORFEITURE:** |
| | : | 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. |
| | : | § 2461(c); 21 U.S.C. § 853(p) |

**INFORMATION**

The United States of America charges that:

At times material to this Information:

**COUNT ONE**

**Introduction**

1.     The mission of the District of Columbia Department of Human Services ("DC DHS") was to provide temporary support and assistance to low-income families and individuals while helping them maximize their potential for economic security and self-sufficiency. Services offered by DC DHS to District of Columbia residents included the Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the food stamps program, and Temporary Assistance for Needy Families ("TANF"), which consists of cash benefits. SNAP and TANF were both federally funded, in whole or in part.

2.     Benefits for SNAP and TANF were provided to DC DHS clients via Electronic Benefit Transfer ("EBT") cards. An EBT card was associated with and displayed a beneficiary's name and unique account number. SNAP benefits could only be used to purchase food at

retailers that accepted the EBT card, while TANF's cash benefits could be accessed anywhere that a traditional debit card could be used, including automated teller machines.

3. An "underpayment" occurred when DC DHS clients did not receive the SNAP or TANF benefits for which they were eligible. Underpayments could be caused by agency error (like a data entry error) or client error (like a failure to provide accurate and timely information about earnings, expenses or assets). Social Service Representatives ("SSRs") at DC DHS reviewed and processed applications for SNAP and TANF payments, as well as underpayments. SSRs were permitted to authorize up to $2,000 in underpayments without supervisory approval.

4. The District of Columbia Access System (DCAS) was a computer system used by DC DHS to manage services offered by DC DHS, including SNAP and TANF, including the creation of SNAP and TANF underpayments.

5. FIS was the third party provider used by DC DHS to fund EBT cards and record EBT card transactions committed with those cards.

6. At the conclusion of each workday, all of the underpayments authorized in DCAS that day were batched and sent from the DCAS server in the District of Columbia to an FIS server located elsewhere (not in the District of Columbia). The batch included the name, account number, and amount of underpayment that FIS was to be fund to each beneficiary's EBT card. Each batch was associated with a unique identification number created by the DCAS server and transmitted to the FIS server.

7. Gary T. Holliday ("Defendant Holliday") was an SSR Training Specialist and Policy Analyst at DC DHS. Defendant Holliday floated between various DC DHS offices, but mainly worked from DC DHS's H Street Service Center, located at 645 H Street, Northeast, in

Washington, D.C. Defendant Holliday had access to DCAS and the ability to create underpayments.

8. "Fair Hearings" were conducted at the D.C. Office of Administrative Hearings ("OAH") to resolve disputes between DC DHS and its clients regarding decisions about SNAP and TANF eligibility. In his role as a Policy Analyst, Defendant Holliday represented DC DHS at Fair Hearings. If a client received a favorable ruling, Defendant Holliday prepared a memorandum directing an SSR to process any benefits owed, including underpayments.

### The Scheme to Defraud

7. Between on or about March 2017 and December 2018, in the District of Columbia and elsewhere, Defendant Holliday knowingly devised, intended to devise, and participated in a scheme and artifice to defraud and to obtain money and property from DC DHS by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts in connection with the issuance of SNAP and TANF benefits and underpayments.

### The Purpose of the Scheme

8. The purpose of the scheme to defraud was for Defendant Holliday to unlawfully enrich himself by creating fraudulent underpayments for Person A and using the EBT card issued in Person A's name to divert the fraudulent proceeds to his own benefit.

### The Manner and Means of the Scheme

9. It was a part of the scheme to defraud that without Person A's knowledge or consent, Defendant Holliday created a fraudulent application for SNAP and TANF benefits for Person A and Person A's purported unborn child. Person A, Defendant Holliday's cousin, had previously sought and received SNAP benefits at DC DHS, but not since September 2014. Defendant Holliday accessed Person A's 2014 application file at DC DHS. Defendant Holliday

used information and documents located in the 2014 file, including Person A's date of birth, social security number, mailing address, and a photocopy of Person A's Maryland State driver's license, to create the fraudulent application, and dated it March 24, 2017. Defendant Holliday forged Person A's signature on multiple application documents.

10. It was further a part of the scheme to defraud that Defendant Holliday used his position as a Policy Analyst to create and transmit a fraudulent memorandum, dated June 19, 2017 (the "June 19, 2017 Memorandum), directing another DC DHS employee to process any SNAP and TANF benefits owed to Person A based on the outcome of a purported Fair Hearing. At the time Defendant Holliday created and transmitted the memorandum, Defendant Holliday was aware that OAH had never held a Fair Hearing pertaining to Person A. In the June 19, 2017 Memorandum, Defendant Holliday intentionally made false statements to the effect that Person A requested a hearing because the Agency failed to determine SNAP and TANF eligibility for her and her unborn child; that Person A made an office visit on March 24, 2017; that Person A provided Defendant Holliday with her receipt from Congress Heights Service Center indicating she dropped off her application; and that Defendant Holliday had confirmed Person A's in-person visit through a computer system previously used at DC DHS to sign in customers electronically.

11. It was further a part of the scheme that Defendant Holiday intended for these false statements to cause a DC DHS employee under his supervision to process SNAP benefits and TANF underpayments for Person A, to which Person A was not entitled. Specifically, as a result of Defendant Holliday's fraudulent June 19, 2017 Memorandum, between on or about June 26 and June 27, 2017, another employee at DC DHS processed Person A's case in DCAS, resulting

in the creation of four SNAP underpayments (totaling $2,843.01), one TANF underpayment (for $907), and a $20.01 utility allowance.

12. It was further a part of the scheme that between on or about June 30, 2017, and November 13, 2018, Defendant Holliday accessed Person A's account in DCAS repeatedly and created approximately 445 additional TANF underpayments totaling $402,227, knowing that Person A was not entitled to these underpayments. In total, Defendant Holliday created or caused to be created approximately $405,070.01 in fraudulent underpayments to Person A's DCAS account.

13. It was further a part of the scheme that, without the knowledge of Person A, Defendant Holliday obtained and maintained possession and control of the EBT card that was issued in Person A's name as a result of the fraudulent March 24, 2017, application. Defendant Holliday repeatedly used the EBT card between June 2017 and November 2018 to obtain approximately $404,800.31 in proceeds of the fraudulent underpayments he caused to be funded to Person A's EBT card.

### Execution of the Scheme

14. On or about November 13, 2018, Defendant Holliday, for the purpose of executing the above-described scheme and artifice to defraud, did transmit and cause to be transmitted writings, signs, signals and sounds by means of wire communication in interstate commerce, that is, a transmission of a document directing FIS to fund Person A's EBT card with a fraudulent underpayment in the amount of $907, from a government server located in the District of Columbia to an FIS server located outside the District of Columbia.

**(Wire Fraud, in violation of Title 18, United State Code, Section 1343)**

## **FORFEITURE ALLEGATION**

1. Upon conviction of the offense in Count One in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  The United States will also seek a forfeiture money judgment against the defendant in the amount of at least $400,000.

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

 a. cannot be located upon the exercise of due diligence;

 b. has been transferred or sold to, or deposited with, a third party;

 c. has been placed beyond the jurisdiction of the Court;

 d. has been substantially diminished in value; or

 e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), Title 21, United States Code, Section 853(p), Title 28, United States Code, Section 2461(c))**

JESSIE K. LIU
UNITED STATES ATTORNEY
D.C. Bar No. 415793

By: *(signature)*

EMILY A. MILLER
D.C. Bar No. 462077
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th Street, N.W., 5th Floor
Washington, D.C. 20530
(202) 252-6988
Emily.Miller2@usdoj.gov