FILED
FEB 27 2019
Clerk, U.S. District and Bankruptcy Courts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Criminal No. 1:19-cr-000050 (RC) |
| GARY T. HOLLIDAY, | : |
| Defendant. | : |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Cr. P. 11, defendant Gary T. Holliday ("Defendant Holliday") agrees and stipulates as follows:

### Background

At all times relevant to this Statement of Offense:

1.  The mission of the District of Columbia Department of Human Services ("DC DHS") was to provide temporary support and assistance to low-income families and individuals while helping them maximize their potential for economic security and self-sufficiency. Services offered by DC DHS to District of Columbia residents included the Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the food stamps program, and Temporary Assistance for Needy Families ("TANF"), which consisted of cash benefits. SNAP and TANF were both federally funded, in whole or in part.

2.  Benefits for SNAP and TANF were provided to DC DHS clients via Electronic Benefit Transfer ("EBT") cards. An EBT card was associated with and displayed a beneficiary's name and unique account number. SNAP benefits could only be used to purchase food at retailers that accepted the EBT card, while TANF's cash benefits could be accessed anywhere that a traditional debit card could be used, including automated teller machines.

3. An "underpayment" occurred when DC DHS clients did not receive the SNAP or TANF benefits for which they were eligible. Underpayments could be caused by agency error (like a data entry error) or client error (like a failure to provide accurate and timely information about earnings, expenses or assets). Social Service Representatives ("SSRs") at DC DHS reviewed and processed applications for SNAP and TANF payments, as well as underpayments. SSRs were permitted to authorize up to $2,000 in underpayments at a time without supervisory approval.

4. The District of Columbia Access System ("DCAS") was a computer system used by DC DHS to manage services offered by DC DHS, including the creation of SNAP and TANF underpayments. The DCAS server was located in the District of Columbia.

5. FIS was the third party provider used by DC DHS to fund EBT cards and record EBT card transactions committed with those cards.

6. At the conclusion of each workday, all of the underpayments authorized in DCAS that day were batched and sent from the DCAS server in the District of Columbia to an FIS server located elsewhere (not in the District of Columbia). The batch included the name, account number, and amount of underpayment that FIS was to fund to each beneficiary's EBT card. Each batch was associated with a unique identification number created by the DCAS server and transmitted to the FIS server.

7. Defendant Holliday was an SSR Training Specialist and Policy Analyst at DC DHS. Defendant Holliday floated between various DC DHS offices, but mainly worked from DC DHS's H Street Service Center, located at 645 H Street, Northeast, in Washington, D.C. Defendant Holliday had access to DCAS and the ability to authorize underpayments in the DCAS system.

8. "Fair Hearings" were conducted at the D.C. Office of Administrative Hearings ("OAH") to resolve disputes between DC DHS and its clients regarding decisions about SNAP and TANF eligibility. In his role as a Policy Analyst, Defendant Holliday represented DC DHS at Fair Hearings. If a client received a favorable ruling, Defendant Holliday prepared a memorandum directing an SSR to provide any benefits owed, including underpayments.

### Offense Conduct

9. Between at least March 2017 and June 2017, Defendant Holliday created a fraudulent application for SNAP and TANF benefits for Person A and her purported unborn child, without Person A's knowledge or consent. Person A, Defendant Holliday's cousin, had previously sought and received SNAP benefits at DC DHS, but not since September 2014. Defendant Holliday accessed Person A's 2014 application file at DC DHS. Defendant Holliday used information and documents located in the 2014 file, including Person A's date of birth, social security number, mailing address, and a photocopy of Person A's Maryland State driver's license, to create the fraudulent application, and dated it March 24, 2017. Defendant Holliday forged Person A's signature on multiple application documents.

10. Defendant Holliday used his position as a Policy Analyst to create and transmit a fraudulent memorandum, dated June 19, 2017 ("June 19, 2017 Memorandum"), directing another DC DHS employee to process any SNAP and TANF benefits owed to Person A, based on the outcome of a purported Fair Hearing. At the time Defendant Holliday created and transmitted the memorandum, Defendant Holliday was aware that OAH had never held a Fair Hearing pertaining to Person A. In the June 19, 2017 Memorandum, Defendant Holliday intentionally made false statements to the effect that Person A requested a hearing because the Agency failed to determine her SNAP and TANF eligibility for her and her unborn child; that

Person A made an office visit on March 24, 2017; that Person A provided Defendant Holliday with her receipt from Congress Heights Service Center indicating she dropped off her application; and that Defendant Holliday had confirmed Person A's in-person visit through a computer system previously used at DC DHS to sign in customers electronically.

11. Defendant Holiday intended for these false statements to cause a DC DHS employee under his supervision to process SNAP and TANF underpayments for Person A, to which Person A was not entitled. Specifically, as a result of Defendant Holliday's fraudulent June 19, 2017 Memorandum, between on or about June 26 and June 27, 2017, another employee at DC DHS processed Person A's case in DCAS, resulting in the creation of four SNAP underpayments (totaling $2,843.01), one TANF underpayment (for $907), and a $20.01 utility allowance.

12. Thereafter, between on or about June 30, 2017, and November 13, 2018, Defendant Holliday accessed Person A's account in DCAS repeatedly and created approximately 445 additional TANF underpayments totaling $402,227, knowing that Person A was not entitled to these underpayments. In total, Defendant Holliday created or caused to be created approximately $405,070.01 in fraudulent underpayments to Person A's DCAS account.

13. Defendant Holliday obtained and maintained possession and control of the EBT card that was issued in Person A's name as a result of the fraudulent March 24, 2017, application. Defendant Holliday repeatedly used the EBT card between June 2017 and November 2018 to obtain approximately $404,800.31 in proceeds of the fraudulent underpayments he caused to be funded to Person A's EBT card.

14. Defendant Holliday admits that the proceeds he personally obtained as a result of the wire fraud scheme described above have been dissipated by him and cannot be located upon

the exercise of due diligence; have been transferred or sold to, or deposited with a third party; and/or have been placed beyond the jurisdiction of the Court.

15. This proffer of evidence is not intended to constitute a complete statement of all facts known by the defendant, but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for defendant's plea of guilty to the charged crime.

        Respectfully submitted,

        JESSIE K. LIU
        UNITED STATES ATTORNEY
        D.C. Bar No. 415793

By: *[signature]*

        EMILY A. MILLER
        D.C. Bar No. 462077
        Assistant United States Attorney
        Fraud & Public Corruption Section
        555 4th Street, N.W., 5th Floor
        Washington, D.C. 20530
        (202) 252-6988
        Emily.Miller2@usdoj.gov

### Defendant's Acceptance

I have read this Statement of the Offense and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of the Offense and all matters relating to it. I fully understand this Statement of the Offense and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

___2/27/19___  
Date

___[signature]___  
GARY T. HOLLIDAY  
Defendant

### Defense Counsel's Acknowledgment

I am Defendant Gary T. Holliday's attorney. I have reviewed every part of this Statement of the Offense with him. It accurately and completely sets forth the Statement of the Offense agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

___2/27/19___  
Date

___[signature]___  
JEFFREY JACOBOVITZ  
Attorney for Defendant